1  RANDY P. ORLIK (State Bar No. 88025)
   SUSAN S. DAVIS (State Bar No. 125854)
2  COX, CASTLE & NICHOLSON LLP
   2029 Century Park East, 21st Floor
3  Los Angeles, CA 90067-3284
   Telephone:   (310) 284-2200
4  Facsimile:    (310) 284-2100
   Email:  rorlik@coxcastle.com
5          sdavis@coxcastle.com

6
   Attorneys for Appellant
7  TOWNSHIP NINE AVENUE, LLC

8
                    UNITED STATES DISTRICT COURT
9
                  EASTERN DISTRICT OF CALIFORNIA
10

11
   In re:                              District Court Case No.
12 CAPITOL STATION 65, LLC             2:18-CV-00554-MCE
            Debtor.
13                                     Bankruptcy Court Case No.
   TOWNSHIP NINE AVENUE, LLC           17-23627-B-11
14          Appellant,
                                       Bankruptcy Appellate Panel Number
15       v.                            EC-18-1059

16 CAPITOL STATION 65, LLC
            Appellee.
17

18

19              **APPELLANT'S OPENING BRIEF**

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

# Table of Contents

**Page**

**I.** STATEMENT OF JURISDICTION ..................................................................1

**II.** THE RECORD ON APPEAL ........................................................................1

**III.** STATEMENT OF THE ISSUES ON APPEAL ............................................1

**IV.** STANDARD OF REVIEW ...........................................................................2

**V.** STATEMENT OF THE CASE .......................................................................3

**VI.** ARGUMENT .................................................................................................8

    A.     Introduction. ..........................................................................8

    B.     The Bankruptcy Court Erred In Ordering Substantive Consolidation of the Debtors and Their Estates.......................10

          1.     No Harm Exists In These Cases That Will Be Remedied By Substantive Consolidation...................10

          2.     Even If Substantive Consolidation Might Be Appropriate, Debtors Failed To Satisfy The *Bonham* Test........................................................................11

          3.     There Was No Evidence of Conduct That Supported Granting the Consolidation Motion. ................15

          4.     No Evidence Supports the Bankruptcy Court's Finding That Appellant Viewed All Four Debtors as a Single Economic Unit. ..............................16

          5.     Substantive Consolidation Is Not Mandated Simply Because CS 65 Is The Sole Source of Funds To Repay the Loan. .................................................18

          6.     Enhancing Debtors' Ability To Confirm a Plan, Over Appellant's Objection Is Not a Sufficient Grounds For Ordering Substantive Consolidation. ...............20

    C.     The Bankruptcy Court Erred By Taking Judicial Notice of The Contents of All Schedules and Fourteen Additional Pleadings Filed In The Bankruptcy Cases As Described in the Reconsideration Order.......................................................21

    D.     Appellant Was Not Required To Request An Evidentiary Hearing .........................................................................24

**VII.** CONCLUSION ...........................................................................................25

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

-1-

APPELLANT'S OPENING BRIEF

# Table of Authorities

**Page**

## Cases

*Alexander v. Compton (In re Bonham),*
229 F.3d 750 (9th Cir. 2000) ......................................................................... 8, 12, 13, 17

*American Exp. Travel Related Servs. v. Vinhnee (In re Vinhnee),*
336 B.R. 437 (9th Cir. BAP 2005) ........................................................................... 21

*Chemical Bank New York Trust Co. v. Kheel,*
369 F.2d 845 (2d Cir. 1966) ................................................................................... 10

*Eastgroup Properties v. Southern Motel Assoc., Ltd.,*
935 F.2d 245 (11th Cir. 1991) ................................................................................. 12

*Estate of Reis,*
87 T.D. 1016, Tax Ct. Rep. (CCH) 43482, 1986 WL 22049 (1986) ........................ 23

*FDIC v. Colonial Realty Co.,*
966 F.2d 57 (2d Cir. 1992) .............................................................................. 9, 10, 15

*Galam v. Carmel (In re Larry's Apt., L.L.C.),*
249 F.3d 832 (9th Cir. 2001) ..................................................................................... 2

*HS Servs. v. Nationwide Mut. Ins. Co.,*
109 F.3d 642 (9th Cir. 1997) ..................................................................................... 2

*In re Aughenbaugh,*
125 F.2d 887 (3d Cir. 1942) ............................................................................... 22, 24

*In re Augie/Restivo Baking Co.,*
860 F.2d 515 (2d Cir. 1988) ...................................................................... 10, 12, 13, 14

*In re Blumer,*
95 B.R. 143 (9th Cir. BAP 1988) ............................................................................. 22

*In re Cent. European Indus. Dev. Co. Llc,*
288 B.R. 572 (Bankr. N.D. Cal. 2003) ................................................................. 20, 21

*Clark's Crystal Springs Ranch, LLC v. Gugino (In re Clark),*
548 B.R. 246 (9th Cir. BAP 2016) ........................................................................... 24

*In re Continental Vending Machine Corp.,*
517 F.2d 997 (2d Cir. 1975), *cert. denied*, 424 U.S. 913 S.C. 1111,
47 L.Ed. 2d 314 (1978).............................................................................................. 12

*In re Gen. Growth Props.,*
409 B.R. 43 (Bankr. S.D.N.Y. 2009) ........................................................................ 19

*In re Johnson,*
564 B.R. 653 (E.D. Cal. 2017) ................................................................................... 2

*In re New England Fish Co.,*
749 F.2d 1277 (9th Cir. 1984) ................................................................................... 2

*In re Owens Corning,*
419 B.R. 195 (3d Cir. 2005) ..................................................................... 10, 12, 14, 15, 20

*In re Snider Bros., Inc.,*
18 B.R. 230 (Bankr. D. Mass. 1982) ........................................................................ 10

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

- 2 -

APPELLANT'S OPENING BRIEF

*Lee v. City of Los Angeles,*
    250 F.3d 668, (9th Cir.2001) ............................................................................23

*Pierce v. Underwood,*
    487 U.S. 552, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) ...........................3

*Salve Regina College v. Russell,*
    499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991) ...........................3

*U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC,*
    138 S.Ct. 960, 200 L. Ed. 2d 218; 2018 WL 1143822, at *1 (U.S. Mar.
    5, 2018) ..................................................................................................2

*U.S. v. United States Gypsum Co.,*
    333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948) .....................................2

*United States ex rel. Lindenthal v. General Dynamics Corp.,*
    61 F.3d 1402 (9th Cir. 1995), *cert den.,* 517 U.S. 1104, 116 S. Ct. 1319
    (1996) ......................................................................................................2

*United States v. Wilson,*
    631 F.2d 118 (9th Cir. 1980) ...........................................................................21

## Statutes

11 U.S.C. § 105(a) ................................................................................................12

11 U.S.C. § 1129(a) .............................................................................................23

11 U.S.C. § 1129(a)(10) .......................................................................................23

11 U.S.C. §§ 101, *et seq.* ......................................................................................4

28 U.S.C. § 157(b)(2)(L) .......................................................................................1

28 U.S.C. § 158(b) ................................................................................................1

28 U.S.C. § 158(c) .................................................................................................1

## Rules

Bankr. E.D. Cal. R. 9014-1(d(1) ...................................................................24,25

Fed. R. Bankr. P. 9023 .........................................................................................6

Fed. R. Bankr. P. 1015 ................................................................................11, 12

Fed. R. Bankr. P. 1015(b) advisory committee's notes ...................................12

Fed. R. Civ. P. 56(c)(4) ......................................................................................24

Fed. R. Evid. R. 201 .....................................................................................21, 22

Fed. R. Evid. R. 801 (d) ......................................................................................22

## Treatises

Hon. Barry Russell, <u>Bankruptcy Evidence Manual</u> § 201.5 (2017) ...............22

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

- 3 -

APPELLANT'S OPENING BRIEF

# I.

## STATEMENT OF JURISDICTION

This appeal arises out of the Order Granting Motion for Substantive Consolidation, as modified by that Order Granting In Part And Denying In Part Evidentiary Objection and Denying Motion to Reconsider (collectively, the "Order") of the United States Bankruptcy Court, Eastern District of California, (the "Bankruptcy Court"), the Honorable Christopher D. Jaime presiding.  The Bankruptcy Court had subject matter jurisdiction over the matters pertaining to this appeal, which arose from a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  The subject matter jurisdiction of the Court is provided in 28 U.S.C. §§ 158(a) and (c).

# II.

## THE RECORD ON APPEAL

The record on appeal consists of the Appellant's Appendix of Excerpts of the Record on Appeal and the Bankruptcy Court Clerk's Record.[1]

# III.

## STATEMENT OF THE ISSUES ON APPEAL

1.      Whether the Bankruptcy Court erred by taking judicial notice of the content of all of the debtors' schedules, and fourteen additional pleadings filed in the bankruptcy cases, as described in the Bankruptcy Court's Order Granting in Part and Denying in Part Evidentiary Objection and Denying Motion to Reconsideration, and admitting them into evidence.

2.      Whether the Bankruptcy Court erred in ordering substantive consolidation of the debtors and estates of Capitol Station 65, LLC ("CS 65"), Capitol Station Member, LLC ("CS Member"), Capitol Station Holdings, LLC ("CS Holdings") and Township Nine Owners, LLC ("Township Nine").

---

[1]   Citations to "AA" refer the Appellant's Appendix of Excerpts of the Record on Appeal.

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

- 1 -

APPELLANT'S OPENING BRIEF

# IV.

## <u>STANDARD OF REVIEW</u>

When reviewing a bankruptcy court's decision, a district court functions as an appellate court and applies the standard of review generally applied in federal appellate courts. *In re Johnson,* 564 B.R. 653, 655-656 (E.D. Cal. 2017). A bankruptcy court's conclusions of law are subject to the *de novo* standard of review. *See Galam v. Carmel (In re Larry's Apt., L.L.C.)*, 249 F.3d 832, 836 (9th Cir. 2001). Under the *de novo* standard of review, the appellate court is free to disregard the reasoning and determination of the lower court as if no decision had been rendered. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir. 1984).

A bankruptcy court's findings of fact are reviewed for clear error. *Larry's Apartment*, 249 F.3d at 836. Under the clear error standard of review, the appellate court should reverse the Bankruptcy Court's determination only if the appellate court has a definite and firm conviction that the Bankruptcy Court has made an error. *See, e.g., U.S. v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948).

The interpretation and meaning of contract provisions are questions of law reviewed under the *de novo* standard of review. *HS Servs. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644 (9th Cir. 1997). When the lower court uses extrinsic evidence to interpret a contract, the findings of fact are reviewed under a clearly erroneous standard, while the principles of contract law applied to those facts are reviewed *de novo*. *United States ex rel. Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1411 (9th Cir. 1995), *cert den.*, 517 U.S. 1104, 116 S. Ct. 1319 (1996).

Mixed questions of law and fact are to be broken into their component parts and each part reviewed under the appropriate standard of review. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960, 200 L. Ed. 2d 218; 2018 WL 1143822, at *1 (U.S. Mar. 5, 2018). "[T]he standard of review for a mixed question all depends —on whether answering it entails primarily legal or factual work." *Id*. When applying the

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                    - 2 -

APPELLANT'S OPENING BRIEF

1   law to the historical facts "involves developing auxiliary legal principles of use in other

2   cases—appellate courts should typically review a decision *de novo*." *Id.* (citing *Salve*

3   *Regina College v. Russell*, 499 U.S. 225, 231-33, 111 S. Ct. 1217, 113 L. Ed. 2d 190

4   (1991)). When the mixed question requires immersion in case-specific, narrow factual

5   issues that "utterly resist generalization," the mixed question review is to be deferential.

6   *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 561-62, 108 S. Ct. 2541, 101 L. Ed.

7   2d 490 (1988)).

8                                              **V.**

9                           **STATEMENT OF THE CASE**

10        Copia Lending, LLC (then known as ISIS Lending, LLC) ("Copia") extended a

11  $20,000,000 credit facility (the "Loan") to Capitol Station 65, LLC ("CS 65") in

12  December 2008, which is secured by a first priority deed of trust ("Deed of Trust")

13  encumbering all of CS 65's personal  and real property.  AA V.I AA00132; AA V.I

14  AA00320-AA00321.  The real property consists of approximately 65 acres of

15  undeveloped land located near downtown Sacramento California ("Property").  AA V.I

16  AA00129-AA00130.  The Property is slated to be developed as a mixed-use, transit-

17  oriented project that will include high density rental housing, for sale housing, retail

18  space, office space and community open space. *Id.*

19        At the Loan's inception, Copia specifically negotiated, as additional collateral for

20  the Loan, a pledge of the membership interests in CS 65 by CS 65's members. AA V.I

21  AA00321.  Thus, in connection with the extension of credit, the members of CS 65

22  (NCRF Holdings, Inc., Invision Holdings, Inc. and Scott Syphax) pledged 100% of

23  their membership interests in CS 65 as additional security for the Loan.  AA V.I

24  AA00321; AA V.II AA00493-0. The Loan was fully advanced by the end of 2010.

25  AA V.I AA00321.

26        In August 2011 in connection with the first of three amendments of the Loan

27  ("First Amendment"), the members of CS 65 formed two new entities: CS Member

28  which became the sole member of CS 65, and CS Holdings, which became the sole

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                          - 3 -

APPELLANT'S OPENING BRIEF

member of CS Member.  AA V.I AA00132; AA V.I AA00321-AA00322.  As a condition to Copia agreeing to execute the First Amendment, which extended the maturity date of the Loan, Copia specifically negotiated for a pledge by CS Member of its membership interests in CS 65 and a pledge by CS Holdings of its membership interests in CS Member to secure CS 65's obligations to Copia.  AA V.I AA00324.  CS Member pledged its membership interest in CS 65 to Copia to secure CS 65's obligations to Copia.  AA V.I AA00132; AA V.II AA00618-AA00652.  CS Holdings pledged its membership interest in CS Member to Copia to secure CS 65's obligations to Copia. AA V.I AA00132; AA V.II AA00654-AA00699.  Copia specifically relied on CS 65 being a separate entity distinct from its initial members at the origination of the facility and distinct from CS Member and CS Holdings when it entered into the First Amendment.  AA V.I AA00324.

The Loan matured and became fully due and payable on December 31, 2015.  AA V.I AA00323.  Subsequently, in February 2016, the owners of CS Holdings transferred 92% of their ownership interest in CS Holdings to First Capital Real Estate Operating Partnership, L.P. and First Capitol Real Estate Trust Incorporated (collectively "First Capital"). AA V.I AA00133; AA V.I AA00156-AA00158.  The principal of First Capital is Suneet Singal.  *Id*.

Throughout 2016, Copia engaged in negotiations with First Capital trying to reach an agreement for restructuring the matured Loan. AA V.I AA00133.  When those negotiations failed, Copia caused a notice of default to be filed under the Deed of Trust in January 2017, and scheduled a trustee's sale for May 31, 2017.  *Id*.  In anticipation of the sale, Copia transferred all of Copia's interest in and to the Loan to Appellant. AA V.I AA00323-AA00324.

On May 30, 2017, one day before the trustee's sale, CS 65, CS Member, CS Holdings and Township Nine (collectively "Debtors") filed voluntary chapter 11 petitions under Title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*)

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 4 -

APPELLANT'S OPENING BRIEF

("Bankruptcy Code").[2]  AA V.I, AA00133.  The four cases are jointly administered.

Debtors filed their Second Amended Joint Plan of Reorganization ("Plan") on

November 1, 2017.  AA V.I, AA00002.  Debtors' Plan applies to all four bankruptcy

cases.  AA V.I AA00006.

In Debtor's Disclosure Statement, Debtors assert that the Property is worth over

$81,000,000.  AA V. I AA00116.  Debtors assert that they are solvent and that there

will be sufficient funds to pay all creditors in full.  AA V. I AA00128.  In fact the

Disclosure Statement provides:

> Because Debtors' Plan pays all creditors in full, all member
> interests in Township Nine Owner, LLC, Capitol Station
> Holdings, LLC, capitol Station member , LLC and Capitol
> Station 65, LLC will be retained.  No provision of this Plan
> will alter or affect the rights of any equity holder in the
> Debtors, with the exception that there will be a moratorium on
> any distributions to equity owners on account of their interests
> until after all creditors are paid in full.  AA V. I AA00154

Debtors filed their Motion for Substantive Consolidation ("Consolidation

Motion") on January 9, 2018.  AA V.I, AA00293.  The Consolidation Motion was only

four pages long and was not supported by any evidence whatsoever.  Debtors did not

file any Declarations in support of the Consolidation Motion.  Debtors did not ask the

Bankruptcy Court to take judicial notice of anything in connection with the

Consolidation Motion.  Instead, Debtors included the perfunctory, catchall statement in

their notice of the motion that the Consolidation Motion would be supported by "all

papers and pleadings on file herein and such other evidence that may be presented to

the Court."  AA V.I, AA00299.  Debtors also referred the Bankruptcy Court to their

schedules and statements of financial affairs in footnote 1 of the Consolidation Motion.

AA V.I, AA00294.

Appellant is the only creditor of CS Member and CS Holdings.  AA V.I

AA00294.  Appellant opposed the Consolidation Motion (AA V.I AA00301) and filed

---

[2]   Appellant does not have any claim against Township Nine.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 5 -

APPELLANT'S OPENING BRIEF

1   the Declaration of Robert Perkins ("Perkins Declaration") (AA V.I, AA00318) in

2   support of its opposition.  The Official Committee of Unsecured Creditors filed a

3   Statement in Support of the Consolidation Motion on January 23, 2018 ("Committee

4   Support Statement").  AA V.III AA00801.  In connection therewith, the Committee

5   filed the Declaration of Gary Albertson ("Albertson Declaration").  AA V.III AA00804.

6   Mr. Albertson had been engaged by CS 65 since 2014 to manage various

7   construction contracts for the Property and is the Chair of the Official Committee of

8   Unsecured Creditors.  AA V.III AA00805.  In his declaration, Mr. Albertson stated that

9   he always understood that his company, Project Management Applications, Inc., was

10  engaged by CS 65 and not by CS Member, CS Holdings, or Township Owners LLC

11  (collectively, the "Holding Companies") and the Holding Companies had no active role

12  in the day-to-day operation of the Project.  *Id.*  Mr. Albertson further stated that the bid

13  packages sent to potential contractors stated that the solicitation was on behalf of CS

14  65, bids were submitted to CS65 and winning contracts were with CS65.  *Id.*

15  At the hearing on the Consolidation Motion on February 6, 2018, the Bankruptcy

16  Court, on its own motion, took judicial notice of the Statements of Affairs filed in the

17  four cases and admitted them into evidence.  AA V.III AA00868-AA00869.  The

18  Bankruptcy Court issued its Memorandum and Order Granting Debtor's Motion For

19  Substantive Consolidation on February 12, 2018 ("Original Order"), in which the

20  Bankruptcy Court stated:

21          The court also takes judicial notice of the dockets in all four
            of the above-reference Chapter 11 cases, all schedules,
22          statements of financial affairs, and declarations signed under
            penalty of perjury are admitted into evidence for purposes of
23          this proceeding.  AA V.III AA00835-AA00836.

24  In response to the Original Order, on February 20, 2018, Appellant filed its

25  Motion (1) For Reconsideration of The Court's Memorandum and Order Granting

26  Motion For Substantive Consolidation, And (2) To Alter or Amend Said Order Under

27  Federal Rule of Bankruptcy Procedure 9023; Objections To (1) The Court Taking

28  Judicial Notice of All Statements of Affairs and Schedules and Declarations Under

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                  - 6 -
                        APPELLANT'S OPENING BRIEF

1  Penalty of Perjury, and (2) The Court Admitting Into Evidence All Statements of

2  Affairs and Schedules and Declarations Executed Under Penalty of Perjury

3  ("Reconsideration Motion") AA, VII, AA00856.  On March 20, 2018, in response to

4  the Reconsideration Motion, the Bankruptcy Court, without conducting a hearing,

5  issued its Order Granting In Part And Denying In Part Evidentiary Objection and

6  Denying Motion To Reconsider ("Reconsideration Order").  The Reconsideration Order

7  modified the Original Order and stated:

8           Instead of taking judicial notice of all "pleadings," i.e., all
            documents filed on all dockets in the four Chapter 11 cases,
9           the court limits judicial notices to the following documents
            and undisputed facts from those documents . . . .  AA V.III
10          AA00990-AA00991.

11         The Bankruptcy Court then listed the following fifteen pleadings:  (i) the

12 schedules filed in the four chapter 11 cases, Docket 12 in each case; (ii) Appellant's

13 opposition to the debtor in possession finance motion, Docket 75; (iii) the official

14 hearing transcript of the August 19, 2017 hearing on the debtor in possession finance

15 motion, Docket 128; (iv) second amended plan, Docket 174; (v) the Memorandum and

16 Order Granting Motion to Approve Postpetition Financing, Granting Priming Lien, and

17 Related Relief ("DIP Finance Memorandum and Order"), Docket 333; (vi) the

18 Consolidation Motion, Docket 341; (vii) the notice of hearing for Consolidation

19 Motion, Docket 342; (viii) Appellant's objection to confirmation of the Plan, Docket

20 374; (ix) Appellant's Consolidation Opposition, Docket 393; (x) the Perkins

21 Declaration, Docket 394; (xi) the exhibits to Perkins Declaration, Dockets 401 and 402;

22 (xii) the Albertson Declaration, Docket 405; (xiii) Debtors' reply to Appellant's

23 Consolidation Opposition, Docket 441; (xiv) the civil minutes continuing hearing on

24 Consolidation Motion, Docket 467; and (xv) the official hearing transcript of the

25 February 6, 2018 hearing on the Consolidation Motion, Docket 522.  *Id.*

26         In addition to the fifteen judicially noticed pleadings, the Bankruptcy Court

27 based its Order on provisions of the First Amendment, which added single purpose

28 entity covenants to the Loan Agreement.  AA V.II AA00545-AA00550.  These

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 7 -

APPELLANT'S OPENING BRIEF

1    provisions provide that CS 65 can own no asset other than the Property and has to act as

2    a separate independent entity from CS Member and CS Holdings.  In addition, these

3    provisions require that CS Member own only its membership interest in CS 65 and

4    engage in no other business, and that CS Holdings own only its membership interest in

5    CS Member and engage in no other business.  AA V.II AA00549.

6         Appellant filed a Notice of Appeal of the Original Order on February 23, 2018

7    AA V.III AA00917.  Appellant filed an amended Notice of Appeal of the Original

8    Order, as modified by the Reconsideration Order ("Order"), on March 27, 2018.

9                                          **VI.**

10                                    <u>**ARGUMENT**</u>

11   A.    <u>Introduction.</u>

12        Substantive consolidation prevents no harm to, or inequitable results to, any

13   creditors in these cases.  Debtors assert that they are solvent.  Debtors also assert that

14   their real property is worth approximately $80,000,000, which is more than the total all

15   of the claims in Debtors' cases.  Debtors' Plan proposes to pay all unsecured creditors

16   in full.   CS Member and CS Holdings have only one creditor, which is Appellant.

17   Therefore, there is no harm to creditors that will be remedied by substantive

18   consolidation.  Instead, Appellant will be harmed because substantive consolidation of

19   Debtors' chapter 11 cases will eliminate Appellant's bargained for collateral and rights

20   and remedies against CS Member and CS Holdings.

21        Moreover, Debtors' sole reason for bringing the Consolidation Motion was to

22   assist Debtors in confirmation of their proposed Plan.  Administrative convenience is

23   not an appropriate use of the equitable doctrine of substantive consolidation and does

24   not meet either of the tests for substantive consolidation established by the Ninth

25   Circuit Court of Appeals in *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 766

26   (9th Cir. 2000).

27        Substantive consolidation, like the doctrine of piercing the corporate veil, also

28   requires more than simply the existence of a parent-subsidiary entity structure.  There

must be facts that support disregarding the independent legal existence of different entities and treating them as one. *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992) (stating that "[o]nly a thorough searching of the record, on a case-by-case basis ensures that substantive consolidation effects its sole aim: fairness to all creditors"). Thus, whether substantive consolidation is appropriate in a given case is a fact-intensive analysis, which in turn requires evidence.

Debtors submitted no evidence in support of the Consolidation Motion. The only declarations submitted in connection with Consolidation Motion were those of Mr. Perkins and Mr. Albertson. There was no evidence that Debtors abused corporate formalities. There was no evidence that creditors treated Debtors as a single unit. There was no evidence that the business affairs of Debtors were hopelessly entangled. Due to this lack of evidence, the Bankruptcy Court should have denied the Consolidation Motion.

Instead, in an attempt to find some evidence that would support granting the Consolidation Motion, the Bankruptcy Court took judicial notice of the content of fifteen pleadings in the case. While the Bankruptcy Court was clearly within its discretion to take judicial notice that there had been certain pleadings filed in the case, doing so does not admit into evidence the contents of those pleadings for the truth of the matters contained in them. To do so was clear error.

Given the lack of evidence, the Bankruptcy Court based its Order on the ownership structure of the Debtors. In other words, the Bankruptcy Court held that substantive consolidation was appropriate because the First Amendment to Loan Agreement provided that (a) CS 65 could own no asset other than the Property and had to act as a separate independent entity from CS Member and CS Holdings, (b) CS Member could own only its membership interest in CS 65 and engage in no other business, (c) CS Holdings could own only its membership interest in CS Member and engage in no other business and (d) both CS Member and CS Holdings guaranteed CS 65's obligations to Appellant. Appellant has not found any case that concluded that

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                                                - 9 -

APPELLANT'S OPENING BRIEF

1  substantive consolidation was appropriate based on the corporate/entity structure, as the

2  Bankruptcy Court did in this case.

3    For the foregoing reasons, the Bankruptcy Court's Order should be reversed.

4  **B.** **The Bankruptcy Court Erred In Ordering Substantive Consolidation of the**

5    **Debtors and Their Estates.**

6    **1.** **No Harm Exists In These Cases That Will Be Remedied By Substantive**

7  **Consolidation.**

8    Substantive consolidation is used to prevent harm or an inequitable result to

9  creditors that would otherwise occur if the separate existence of the debtor and related

10  entities were honored.  As stated by the Second Circuit Court of Appeal, "the sole

11  purpose of substantive consolidation is to ensure the equitable treatment of all

12  creditors." *Augie/Restivo*, 860 F.2d 515, 518 (2d Cir. 1988); *Colonial Realty*, 966 F.2d

13  at 61.  The doctrine of substantive consolidation is employed when one group of

14  unsecured creditors, absent substantive consolidation, would be paid less than another

15  group of unsecured creditors.  Thus, if honoring the separate existence of the debtor and

16  related entities does not harm creditors, no purpose is served in employing the equitable

17  remedy of substantive consolidation.

18    Indeed, Courts have almost universally held that substantive consolidation is a

19  remedy to be used sparingly.  *In re Owens Corning*, 419 F.3d 195, 208-209 (3d Cir.

20  2005); *see Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir.

21  1966) ("[t]he power to consolidate should be used sparingly").  "[W]hile the term has a

22  disarmingly innocent sound, consolidation in bankruptcy is no mere instrument of

23  procedural convenience, but a measure vitally affecting substantive rights." *In re*

24  *Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982).

25    There is no harm in these cases that requires the remedy of substantive

26  consolidation.  Debtors assert that they are solvent. AA V.I AA00128.  Debtors also

27  assert that the Property is worth approximately $80,000,000, which is more than the

28  total all of the claims in Debtors' cases.  AA V.I AA00133.  Debtors' Plan proposes to

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

- 10 -

APPELLANT'S OPENING BRIEF

1  pay all unsecured creditors in full.   AA V.I AA00154.   CS 65 has only a few creditors

2  and CS Member and CS Holdings have only one creditor, which is Appellant.  AA V.I

3  AA00294.   Thus, there is no reason to employ the equitable remedy of substantive

4  consolidation and the Bankruptcy Court erred in doing so.

5       Moreover, rather than seeking to remedy a harm, Debtors are seeking to use

6  substantive consolidation offensively to enhance Debtors' ability to confirm their Plan

7  over the objection of Appellant.  That is not a purpose which justifies the use of the

8  equitable remedy of substantive consolidation.  Appellant has not found any reported

9  case in which substantive consolidation was ordered over creditors' objections purely

10  as an administrative convenience for the debtors, as is being sought in the instant case.

11       2.      Even If Substantive Consolidation Might Be Appropriate, Debtors Failed

12  To Satisfy The *Bonham* Test.

13       If the court determines that honoring the separate existence of the debtor and

14  related entities harms creditors, the next step is to see whether the conduct of the

15  debtor, its principals and creditors warrant application of the doctrine.  Since there is no

16  direct statutory authority or prescribed standards for substantive consolidation, courts

17  have developed different tests for invoking the remedy of substantive consolidation,

18  once it has been determined that honoring the separate existence of the debtor and

19  related entities harms creditors.

20       Substantive consolidation is only minimally addressed in the Bankruptcy Code

21  and the Bankruptcy Rules.[3]  Bankruptcy Rule 1015 refers to consolidation of two or

22  more cases for administrative purposes but does not address the issue of substantive

23  consolidation.  The Official Advisory Committee Note (1983) to Bankruptcy Rule 1015

24  distinguishes joint administration from substantive consolidation and notes that

25  substantive consolidation of the estates of two or more debtors may be appropriate

26  under some circumstances.  Consequently, the authority of a bankruptcy court to order

27

28  [3]  "Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                          - 11 -

APPELLANT'S OPENING BRIEF

substantive consolidation lies in its general equitable powers under Bankruptcy Code § 105(a) and judicially developed standards control whether substantive consolidation should be granted in any given case. *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1000 (2d Cir. 1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L. Ed. 2d 314 (1978).

When successfully invoked, the effect of substantive consolidation is much like the merger of two (or more) entities under state law: inter-company claims and inter-company guarantees are eliminated, and the combined pool of assets created by the consolidation is available to satisfy the claims of all of the creditors of the consolidated entities. *Owens Corning*, 419 F.3d at 205. The creditors in a chapter 11 consolidated case are combined for the purpose of voting on the plan. *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 247 (11th Cir. 1991); and Fed. R. Bankr. P. 1015(b) advisory committee's note..

Although the test for determining whether to apply the doctrine of substantive consolidation varies slightly from court to court, each test looks at the conduct of the debtor, its principals, and unsecured creditors. No test looks solely at the corporate/entity structure. Each test also is applied only when debtors are insolvent.

The Ninth Circuit Court of Appeals has adopted the two-part test used by the Second Circuit Court of Appeals in *Augie/Restivo,* 860 F.2d at 518, which requires the consideration of "(1) whether creditors dealt with entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *Bonham*, 229 F.3d at 766. The issue in *Bonham* case was whether the chapter 7 estate of the debtor, RaeJean Bonham, should be substantively consolidated with the estates of two non-debtor corporations, World Plus, Inc., ("WPI") and Atlantic Pacific Funding Corp. ("APFC"). *Bonham*, 229 F.3d at 759. Ms. Bonham operated a Ponzi scheme using WPI and APFC. *Id.* at 759. The bankruptcy court found that Ms. Bonham transferred investment income from one investor to another in satisfaction of prior investment

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                - 12 -
APPELLANT'S OPENING BRIEF

contracts, misused investment income for personal benefit, and intermingled and confused the accounts of both WPI and APFC. *Id.* at 767.  Given these facts, the bankruptcy court ordered the substantive consolidation of WPI and APFC (two non-debtor corporations) with the bankruptcy estate of Ms. Bonham. *Id.* at 766.

On appeal, the Ninth Circuit stated that it had to determine "whether Bonham's creditors either dealt with WPI, APFC and Bonham as a single economic unit and did not rely on the separate credit of each of the consolidated entities; or, whether the operations of WPI and APFC were excessively entangled with Bonham's affairs to the extent that the consolidation will benefit all creditors." *Id.* at 766.  In concluding that substantive consolidation was appropriate, the Ninth Circuit focused on the actions of Ms. Bonham and reasoned that:

> Bonham commingled her personal assets with those of WPI and APFC, that there was no clear demarcation between the affairs of Bonham, WPI and APFC, and that Bonham often commingled the assets and names of WPI and APFC. (Citation omitted).  In light of the multiplicity of investors and claims and the lack of cooperation on the part of Bonham, the Bankruptcy Court did not clearly err in determining that the exercise of disentangling the affairs of Bonham, WPI and APFC would be needlessly expensive and possibly futile. *Id.* at 767.

In the *Augie/Restivo* case, the issue was whether the bankruptcy case of Augie's Banking Company, Ltd. ("Augie's") should be substantively consolidated with the bankruptcy case of Restivo Brothers Bakers, Inc. ("Restivo"). *Augie/Restivo*, 860 F.2d at 517.  Before 1985, Augie's and Restivo were two unrelated family run wholesale bakeries. *Id.* at 516.  Union Savings Bank ("Union") had loaned Augie's approximately $2,100,000 secured by a mortgage on its real property and $300,000 secured by Augie's personal property assets. *Id.* at 516-517.

In November 1984, Augie's and Restivo entered into an agreement providing for Restivo's acquisition of all of Augie's stock in exchange for 50% of Restivo's stock. *Id.* at 517.  Augie's was not dissolved, although its affairs were wound up, and Restivo became the sole operating company keeping a single set of books and issuing financial

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                                    - 13 -

APPELLANT'S OPENING BRIEF

statements under the name Augie/Restivo. *Id.* at 517. Manufacturers Hanover Trust Company ("MHTC") extended credit to Augie/Restivo. In April 1986, Augie/Restivo and Augie were forced into bankruptcy. *Id.* at 517. In November 1987, the debtors agreed to sell all of their assets and moved for substantive consolidation of their two cases. *Id.* at 517. Union opposed the motion. *Id.* at 517.

The Second Circuit Court of Appeals reversed the bankruptcy court's order of substantive consolidation, stating:

> The course of dealing and expectations in the instant case do not justify consolidation. It is undisputed that Union's loans to Augie's were based solely upon Augie's financial condition, and that, at the time the loans were made, Union had no knowledge of the negotiations between Augie's and Restivo. MHTC also operated on the assumption that it was dealing with separate entities. MHTC thus sought and received a guarantee from Augie's of MHTC's loans to Augie/Restivo in 1985, including a subordinated mortgage on Augie's real property. Union's claims against Augie's assets are thus clearly superior to those of MHTC. Given these circumstances, the fact that the trade creditors may have believed that they were dealing with a single entity does not justify consolidation. *Id.* at 519.

In the *Owens Corning* case, Owens Corning and certain of its subsidiaries had borrowed $2 billion from a bank group. *Owens Corning*, 419 F.3d at 201. The $2 billion loan was guaranteed by all present and future domestic subsidiaries of Owens Corning having assets with an aggregate book value in excess of $30 million. *Id.* at 201. Owens Corning and 17 of its subsidiaries filed voluntary Chapter 11 petitions. *Id.* at 201-202. The debtors and certain unsecured creditors proposed a plan based on substantively consolidating the 17 debtors along with three non-debtor Owens Corning subsidiaries, which the banks opposed. *Id.* at 202.

The Third Circuit found that there was no evidence of pre-petition disregard of Owens Corning's and its subsidiaries' separateness. *Id.* at 212. The Court noted that the bank loans were premised on the separateness of all Owens Corning entities and that the banks' credit decision to make the $2 billion loan was made in reliance on the existence of separate entities. *Id.* at 212-213. The Court also found that there was no

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                    - 14 -

APPELLANT'S OPENING BRIEF

1  hopeless commingling of assets and liabilities.  Indeed, the Court noted that there was

2  no question which entity owned which principal assets and had which material

3  liabilities:

4      As we have explained, commingling justifies consolidation
       only when separately accounting for the assets and liabilities

5      of the distinct entities will reduce the recovery of every
       creditor-that is, when every creditor will benefit from the

6      consolidation.  Moreover, the benefit to creditors should be
       from cost savings that make assets available rather than from

7      the shifting of assets to benefit one group of creditors at the
       expense of another.  *Mere benefit to some creditors, or*

8      *administrative benefit to the Court, falls short.*  (Emphasis
       added.)  *Id.* at 214.

9

10  Finally, the Third Circuit noted that "substantive consolidation should be used

11  defensively to remedy identifiable harms, not offensively to achieve advantage over one

12  group in the plan negotiation process (for example, by deeming assets redistributed to

13  negate plan voting rights), nor a "free pass" to spare debtors or any other group from

14  proving challenges, like fraudulent transfer claims, that are liberally brandished to

15  scare, yet are hard to show."  *Id.* at 215.

16  As can be seen from the foregoing cases, in addition to the entity structure of the

17  Debtors, conduct by the Debtors, their principals or creditors, such as disregarding the

18  entities' separateness or hopelessly comingling the entities' assets and liabilities, is

19  required to support substantive consolidation.  As discussed below, there was no such

20  conduct in this case.

21      3.    There Was No Evidence of Conduct That Supported Granting the

22  Consolidation Motion.

23  Debtors did not submit any declarations in support of the Consolidation Motion.

24  There must be facts, in addition to the corporate/entity structure, which support

25  disregarding the independent legal existence of different entities and treating them as

26  one.  *Colonial Realty Co.*, 966 F.2d at 61 (stating that "[o]nly a thorough searching of

27  the record, on a case-by-case basis ensures that substantive consolidation effects its sole

28  aim: fairness to all creditors").  Thus, whether substantive consolidation is appropriate

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                        - 15 -

APPELLANT'S OPENING BRIEF

1  in a given case is a fact-intensive analysis, which requires evidence.

2      The only declarations filed were the Albertson Declaration and the Perkins

3  Declaration.  The only creditor of CS Member and CS Holdings is Appellant.  AA V.I

4  AA00294.  All other creditors in the cases are creditors of CS 65 and dealt only with

5  and relied on CS 65, not CS Members, CS Holdings or Township Nine Owners, LLC.

6  AA V.III AA00802; AA, V.III AA00805.  Nonetheless, the Bankruptcy Court in the

7  Order found that other creditors, in addition to Appellant, viewed the debtor entities as

8  a single economic unit, relying on the Committee Support Statement and the Albertson

9  Declaration.  AAV.III AA00844-AA00845.  Neither support the Order.

10     Mr. Albertson, in the Albertson Declaration, stated:

11         I always agreed and understood, and continue to agree and
           understand, that Project Management Applications, Inc. was
12         engaged by CS65 and not by Capitol Station Member LLC,
           Capitol Station Holdings, LLC or Township Owners LLC
13         (collectively, the "Holding Companies").  It has always been
           my understanding that the holding companies had no active
14         role when the day-to-day operations of the Project and that
           vendors, suppliers and contractors on the Project do business
15         with CS65.

16         The bid packages sent to potential contractors clearly stated
           that this solicitation was on behalf of CS65.  The bids were
17         submitted to CS65 and the two winning contractors –Lund
           Construction Co. and A. Teichert & Son, Inc. dba Teichert
18         Construction – contracted with CS65 and not with any of the
           Holding Companies.  AA, V.III AA00805.
19

20     In addition, there was no evidence that Debtors abused corporate formalities.

21  There was no evidence that creditors treated Debtors as a single unit.  There was no

22  evidence that the business affairs of Debtors were hopelessly entangled.  The only

23  evidence of conduct (the Albertson Declaration) before the Bankruptcy Court did not

24  support substantive consolidation.

25     4.   No Evidence Supports the Bankruptcy Court's Finding That Appellant

26  Viewed All Four Debtors as a Single Economic Unit.

27     When Copia made the Loan, CS 65 had three members and Copia specifically

28  negotiated for a pledge of their membership interest in CS 65.  AA V.I 00132; AA V.II

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA
077965\9515788v7
- 16 -
APPELLANT'S OPENING BRIEF

AA00493-AA00534.  The members in CS 65 then restructured and created CS Member and CS Holdings.  AA V.I 00132; AA V.II AA00321-AA00322.  In connection with the First Amendment, CS Member pledged its membership interest in CS 65 and CS Holdings pledged its membership interest in CS Member to Copia to secure the Loan.  AA V.I 00132; AA V.II AA00618-AA00652; AA V.II AA00654-AA00699.  These pledges were simply a continuation of the existing pledge framework and structure, substituting CS Member and CS Holdings for the original member in CS 65.

The First Amendment also contained separateness covenants which required CS 65, CS Member and CS Holdings to operate as separate independent entities.  AA V.I AA00324.  Nothing in the First Amendment showed that Copia thought that the three entities were somehow one entity.  To the contrary, the First Amendment required the Debtors to operate as separate independent entities.

Notwithstanding these facts, the Bankruptcy Court, in the Order stated:

> How could a sophisticated lender such as Copia expect that separate entities who can incur no debt - not even as a guarantor - and who can generate no income because they are prohibited from engaging in any business or activity would have the ability to repay a debt they could not incur in the first instance from income they also could not generate in the first instance? In other words, how could Copia rely on physically separate holding companies that are prohibited from having debt and income in the first place to repay a debt, either directly or indirectly as a guarantor?

> The only answer that makes sense is that, knowing the contractual prohibitions placed on the holding companies under the First Loan Amendment, Copia did not (and realistically could not) expect that any of them would repay its loan to CS 65. The expectation then was that CS 65, as the only entity that could own assets, engage in business, generate income, and incur debt was viewed as the source of payment.

> In short, the court is persuaded that Copia viewed all four of the physically-separate debtor entities as a single *economic* unit consisting of CS 65 and it did not (and in fact realistically could not) rely on the separate identity of those entities when it further extended credit to CS 65 under the First Loan Amendment. That satisfies Bonham's first prong. Bonham, 10 229 F.3d at 766; see also LLS America, 2012 WL 2042503 at *11 ("The first Bonham factor does not address an issue of

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 17 -

APPELLANT'S OPENING BRIEF

law.  Rather, it looks to the intent of the Lenders when the loans were made.").  AA. VII AA00843-AA00844.

As noted by both the Second Circuit and the Third Circuit requiring guaranties from parents, sisters or subsidiaries does not mean, in and of itself, the lender looks at all entities as one.  Aside from the separateness covenants contained in the First Amendment, there was absolutely no evidence that supported the Bankruptcy Court's finding that Copia did not rely on the separate identity of CS 65, CS Member and CS Holdings when it extended credit.  Given that Copia had required a pledge of the membership interest in CS 65 since the inception of the Loan in 2008, the Bankruptcy Court abused its discretion in finding that Copia did not rely on the separate identities of CS 65, CS Member and CS Holdings when it extended credit.

5.     Substantive Consolidation Is Not Mandated Simply Because CS 65 Is The Sole Source of Funds To Repay the Loan.

The structure described by the Bankruptcy Court in the Order (AA. VII AA00843-AA00844) is routinely used in mezzanine loan transactions.  Generally, a loan is made to the entity ("Property Entity") which owns a project (such as an office building, shopping center, apartment complex or hotel) secured by a mortgage or a deed of trust on the real property ("Mortgage Loan").  The Property Entity is generally a limited liability company with a single member ("Mezzanine Borrower").  Mezzanine Borrower borrows money ("Mezzanine Loan") secured by a pledge of Mezzanine Borrower's membership interest in Property Entity.

Both Property Entity and Mezzanine Borrower are required to comply with separateness covenants.  The Property Entity (in this case CS 65) is allowed to own no assets, other than the mortgaged property, and to have no debt, other than the Mortgage Loan and trade debt.  The Mezzanine Borrower (in this case CS Member) is allowed to own no assets, other than its membership interest in the Property Entity, and have no debt other than the Mezzanine Loan.  The sole source of funds to pay the Mortgage Loan and the Mezzanine Loan is income generated by the asset (office building,

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                              - 18 -
                              APPELLANT'S OPENING BRIEF

shopping center, apartment complex, hotel, etc.) owned by the Property Entity.

In the case of *In re Gen. Growth Props*., 409 B.R. 43 (Bankr. S.D.N.Y. 2009), the debtor group had mortgages, which were either conventional or securitized in the commercial mortgage-backed securities market, and mezzanine secured debt. *Id.* at 48-49.  Some of the debtors that issued mortgages that were intended to function as special purpose entities ("SPE").  *Id.* at 49.  As explained by the court, SPE's typically contain restrictions in their loan documents and operating agreements requiring them to maintain their separate existence, limit their debt to the mortgages and incidental debts and their organizations documents usually prohibit consolidation and liquidation, restrict mergers and asset sales, prohibit amendments to organizational and transaction documents and contain separateness covenants, citing Standard and Poor's, Legal Criteria for Structured Finance Transactions (April 2002).  *Id.* at 49.  The court further noted that in mezzanine loans, the lender makes a further loan, ordinarily at a higher interest rate, to a single-purpose entity formed to hold the equity interest in the mortgage-level borrower, which is secured only by the stock or other equity interest of the mortgage level borrower.  *Id.* at 51.  "The single-purpose entity typically has no other debt and its business is limited to its equity interest in the property-owning subsidiary." *Id.* at 51.

In such transactions, the mezzanine borrower generally owns no assets other than its membership interest in the mortgage borrower.  The source of all payments to be made by the mezzanine borrower comes from the operations of the mortgage borrower. This structure is so common that Standard & Poor's, as noted by the court in the *Gen. Growth* case has published legal criteria setting forth what separateness covenant should be and what is required to create this structure.  Thus, the mere fact that the sole source of repayment of the Loan was income generated by CS 65 is not sufficient, in and of itself, to support substantive consolidation.

The Bankruptcy Court attempts to distinguish the structure of the Debtors from the structure of a Mezzanine Loan and Mortgage Loan by noting that there was no

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 19 -

APPELLANT'S OPENING BRIEF

1    independent indebtedness at CS Member or CS Holdings (i.e., a Mezzanine Loan).  The

2    absence of a Mezzanine Loan does not change the structure.  Appellant has not found

3    any case that holds that the existence of a guaranty by the parent of debt to the

4    subsidiary is in and of itself, in the absence of any other facts, sufficient to result in

5    substantive consolidation, especially when the debtors are solvent.  In fact, both the

6    *Augie/Restivo* and *Owens Corning* cases hold to the contrary.

7          6.       Enhancing Debtors' Ability To Confirm a Plan, Over Appellant's

8    Objection Is Not a Sufficient Grounds For Ordering Substantive Consolidation.

9          The only reason Debtors want their cases substantively consolidated is to

10   enhance their ability to confirm a cramdown plan of reorganization, which is an

11   inappropriate use of the doctrine of substantive consolidation.  Once again, as noted by

12   the Third Circuit Court of Appeals, "substantive consolidation should be used

13   defensively to remedy identifiable harms, not offensively to achieve advantage over one

14   group in the plan negotiation process (for example, by deeming assets redistributed to

15   negate plan voting rights), nor a "free pass" to spare debtors or any other group from

16   proving challenges, like fraudulent transfer claims, that are liberally brandished to

17   scare, yet are hard to show."  *Owens Corning*, 419 F.3d at 215.

18         The facts in this case are similar to the facts in the case of *In re Cent. European*

19   *Indus. Dev. Co. Llc*, 288 B.R. 572 (Bankr. N.D. Cal. 2003).  In that case, TKG Europe

20   LP ("TKGE") filed a Chapter 11 case.  *Id.* at 574.  Lehman Brothers Holdings Inc. was

21   the sole creditor of TKGE, and that on basis, filed a motion to dismiss the Chapter 11

22   case.  *Id.*  Three days later, two other debtors (Central European Industrial

23   Development Company and Kontraback Group LP) together with TKGE filed a motion

24   to substantively consolidate all three of their Chapter 11 cases.  *Id.* at 573.  Judge

25   Montali denied the substantive consolidation motion and granted the motion to dismiss

26   stating:

27              Debtors contend that since Lehman caused the corporate
              structure to be created and dealt with the Debtors as a single
28              economic unit, substantive consolidation is exactly what it
              bargained for. But that is totally contrary to the unescapable

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                                    - 20 -

APPELLANT'S OPENING BRIEF

fact that Debtors and Lehman agreed to the structure and further, that plainly Lehman relied on the separation of the entities, notwithstanding their relationships with one another. *Id.* at 576.

The bankruptcy court further reasoned that it would not be equitable to ignore the prepetition wishes of Lehman and the debtors by disregarding the corporate structure the parties so carefully created by agreement. *Id.* at 576. "The fact that other unsecured creditors may lose their ability to be paid is neither equitable nor inequitable. It is the natural consequence of what might happen if Lehman successfully pursues the remedies set forth in Debtors' dire predictions." *Id.*

Similarly, Debtors and Appellant agreed to the entity structure as a condition to the First Amendment and Appellant plainly relied on that structure with the separation of entities and pledges of membership interests in agreeing to make the Loan as well as to amend the Loan not only once, but a total of three times.  It is not equitable to now disregard that structure for the sole purpose of allowing Debtors to confirm a single plan over the objections of Appellant.

C.   The Bankruptcy Court Erred By Taking Judicial Notice of The Contents of All Schedules and Fourteen Additional Pleadings Filed In The Bankruptcy Cases As Described in the Reconsideration Order.

Rule 201 of the Federal Rules of Evidence provides that "a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Appellant acknowledges that a bankruptcy court may take judicial notice of its docket. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).  Appellant also acknowledges that Statements of Affairs and Schedules, executed by Debtors, can have an evidentiary effect, against Debtors, under Federal Rule of Evidence 801(d).  As noted by the Bankruptcy Appellate Panel in *American Exp. Travel Related Servs. v. Vinhnee (In re Vinhnee)*, 336 B.R. 437, 449 (9th Cir. BAP 2005), entries on a debtor's verified

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7

- 21 -

APPELLANT'S OPENING BRIEF

1  schedules "constitute statements by (or adopted by) a debtor that qualify, when offered

2  against the debtor, as admissions by a party opponent that are not hearsay.  Fed. R.

3  Evid. 801 (d)."

4       Taking judicial notice of the filings in an action does not mean that the contents

5  of such filings are admissible as evidence or have any evidentiary weight.  The

6  Honorable Judge Barry Russell, in his <u>Bankruptcy Evidence Manual</u> § 201.5 at 54

7  (2017), states:

8       What then is meant by taking judicial notice of a Court's own
        records?  There exists some mistaken notion that it means

9       taking judicial notice of the truth of facts asserted in every
        document and in the court file, including pleadings and

10      affidavits. . . . It is difficult to understand why the filing of a
        document with a court should magically result in the contents

11      of the document attaining a sufficient degree of reliability to
        overcome evidentiary objections such as hearsay to its

12      admissibility in a trial before a bankruptcy judge.

13

14       In *In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir. 1942), the Third Circuit Court

15  of Appeals stated that it could consider only the evidence presented at the hearing, not

16  other evidence that may have been in the files of the bankruptcy referee.  The Third

17  Circuit concluded that:

18      To hold otherwise would be to violate the fundamental
        concept of procedural due process that a party to litigation is

19      entitled to have the evidence relied on by his opponent
        presented at the hearing of his case so that he may have the

20      opportunity to cross-examine his opponents' witnesses and
        other evidence in rebuttal.  *Id.* at 889.

21

22  *Accord In re Blumer*, 95 B.R. 143, 146-47 (9th Cir. BAP 1988) ("That a fact sought to

23  be noticed is found in a court's records is not talismanic; the fact still must be of the

24  type described in Fed. R. Evid. 201").

25       The Bankruptcy Court took judicial notice of the content of Debtors' Schedules

26  and fourteen other pleadings in the Bankruptcy Court's records.  As is apparent from

27  the Order, the Bankruptcy Court did not merely take notice of the existence of these

28  documents in its files or as admissions by Debtors, but used the contents of these

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                    - 22 -

APPELLANT'S OPENING BRIEF

1    documents as well as others not among the fifteen identified by the Bankruptcy Court

2    against Appellant contrary to the rules of evidence and basic due process.

3         For example, the Bankruptcy Court concludes that Appellant has "no §1129(a)

4    (10) rights in the Member, Holdings, and Owners cases because the Debtors have

5    satisfied §1129(a) (10) with regard to the second amended plan", citing Dkts. 356 at

6    10:10-16, 437 for support.   AA V.III AA00845.  Docket 356 is Debtors'

7    Memorandum of Points and Authorities filed in support of their Plan.  A memorandum

8    of points and authorities has no evidentiary value whatsoever, except possibly as a

9    judicial admission by the party that filed it.  As this document was filed by Debtors, it is

10   not a judicial admission by Appellant.

11        Docket 437 is the Bankruptcy Court's Memorandum and Order Granting

12   Debtors' Motion to Exclude Improperly Case Ballots and to Designate Ballots Cast in

13   Bad Faith.  The fact that the Bankruptcy Court made findings of fact in one order is not

14   a basis for the same court in a different proceeding to take judicial notice of those

15   findings and deem them to be indisputably established for purposes of the pending

16   proceeding.  *Estate of Reis*, 87 T.D. 1016, 1028-29, Tax Ct. Rep. (CCH) 43482, 1986

17   WL 22049 (1986).  A court may take judicial notice of the existence of matters of

18   public record, such as a prior order or decision, but not the truth of the facts cited

19   therein that are subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d

20   668, 689–690 (9th Cir.2001).  Furthermore, whether or not Debtors satisfied

21   § 1129(a)(10) is a plan confirmation issue and that issue was not before the Bankruptcy

22   Court in the motion to designate Appellant's votes on Debtors' Plan or the underlying

23   substantive consolidation motion.  Indeed, the confirmation hearing for the Plan has not

24   yet occurred.

25        Additionally, the Bankruptcy Court took judicial notice of these fifteen

26   pleadings, not at the request of Debtors, but on its own motion and without an

27   evidentiary hearing or opportunity for Appellant to challenge the evidence.  The

28   Bankruptcy Court's blanket judicial notice of these fifteen pleading also failed to

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

077965\9515788v7                     - 23 -

APPELLANT'S OPENING BRIEF

1  identify what the Bankruptcy Court considered to be undisputed facts in the pleadings.

2  The Bankruptcy Court's actions violated Appellant's fundamental due process rights.

3  *Aughenbaugh,* 125 F.2d at 889.

4      Thus, the Bankruptcy Court erred when it took judicial notice of, and admitted

5  into evidence, the content of the fifteen pleadings after the hearing on the Consolidation

6  Motion.

7  D.    <u>Appellant Was Not Required To Request An Evidentiary Hearing</u>

8      Debtors brought the Consolidation Motion and, as the moving parties, had the

9  initial burden of proof of establishing Debtors' right to have the Consolidation Motion

10  granted under one of the *Bonham* factors.  *Clark's Crystal Springs Ranch, LLC v.*

11  *Gugino (In re Clark),* 548 B.R. 246, 254 (9th Cir. BAP 2016).  Only after the moving

12  party meets that initial burden does the burden shift to the opposing party to show

13  otherwise.  *Id.*

14      Debtors also were required under Local Bankruptcy Rule 9014-1(d)(1) to submit

15  evidence in support of the Consolidation Motion.  Local Bankruptcy Rule 9014-1(d)(1)

16  provides:

17      (1)    *Contents of Motion.*  Except as otherwise provided in
        these rules, every application, motion, contested matter or
18      other requests for order, shall be filed separately from any
        other requests, except that relief in the alternative based on
19      the same statute or rule may be filed in a single motion.
        Without incorporation by reference to any other document,
20      exhibit or supporting pleading, the motion shall state with
        particularity the grounds therefore and shall set forth relief or
21      order sought.

22  Local Bankruptcy Rule 9014-1(d)(7) provides:

23      (7)    *Evidence.*  Every motion shall be accompanied by
        evidence establishing its factual allegations and demonstrating
24      that the movant is entitled to relief for requested.  Affidavits
        and declarations shall comply with Fed. R. Civ. P. 56(c)(4).
25

26      As previously noted, Debtors filed a four page motion that was not supported by

27  any evidence whatsoever.  Debtors did not file any declarations in support of the

28  Consolidation Motion.  Debtors did not ask the bankruptcy court to take judicial notice

1  of anything.  Debtors' perfunctory statement in the notice of motion that the
2  Consolidation Motion was based on pleadings on file in the case and brief reference in
3  a footnote in the Consolidation Motion to their schedules submitted do not satisfy the
4  evidentiary proof required by Local Bankruptcy Rule 9014-1(d)(1).

5  Local Bankruptcy Rule 9014-1(d)(1) plainly states that "[e]very motion shall be
6  accompanied by evidence."  Nothing in the rule excludes Debtors.  Since Debtors failed
7  to submit any evidence to satisfy their burden of proof, the burden never shifted to
8  Appellant.  Therefore, Appellant was not required to ask for an evidentiary hearing.

## VII.

## CONCLUSION

For the foregoing reasons, the Appellant, Township Nine Avenue, LLC
respectfully requests that the Court reverse the Bankruptcy Court's Order.

Dated:  April 27, 2018                     Respectfully submitted,

                                           COX, CASTLE & NICHOLSON LLP


                                           By:   */s/ Randy P. Orlik*
                                                 Randy P. Orlik
                                                 Attorneys for Township Nine Avenue, LLC

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                           - 25 -

APPELLANT'S OPENING BRIEF

# CERTIFICATION AS TO INTERESTED PARTIES

The undersigned certifies that the following parties have an interest in the outcome of this appeal.  These representations are made to enable judges of the Panel to evaluate possible disqualification or recusal:

Township Nine Avenue, LLC

Capitol Station 65, LLC

Capitol Station Member, LLC

Capitol Station Holdings, LLC

Township Nine Owners, LLC

First Capitol Real Estate Operating Partnership, L.P.

First Capitol Real Estate Trust Incorporated

Laborers Union Pension Trust of Southern California

Dated:  April 27, 2018                    Respectfully submitted,

COX, CASTLE & NICHOLSON LLP


By:  */s/ Randy P. Orlik*
    Randy P. Orlik
Attorneys for Township Nine Avenue, LLC

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7                    - 26 -

CERTIFICATION AS TO INTERESTED PARTIES

STATEMENT OF RELATED CASES

No other cases in this Court are deemed related to this appeal, other than In re:  CAPITOL STATION 65, LLC, Debtor, TOWNSHIP NINE AVENUE, LLC, Appellant, v. CAPITOL STATION 65, LLC, Appellee pending before this Court Case No. 2:18-CV-00555-TLN.


Dated:  April 27, 2018

Respectfully submitted,

COX, CASTLE & NICHOLSON LLP


By:   */s/ Randy P. Orlik*
Randy P. Orlik
Attorneys for Township Nine Avenue, LLC

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
LOS ANGELES, CA

077965\9515788v7

- 27 -

STATEMENT OF RELATED CASES